IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:23-CV-141-D

RODNEY H. WITHERSOON and )
SALIMAH HANAN EL-AMIN, )
                                    )
        Plaintiffs,                  )
                                    )
v.                                  )        **ORDER**
                                    )
STATE EMPLOYEES' CREDIT UNION,      )
                                    )
        Defendant.                   )

On August 29, 2023, Rodney H. Witherspoon ("Witherspoon") and Salimah Hanan El-Amin ("El-Amin") (collectively "plaintiffs") filed a complaint against State Employees' Credit Union ("SECU" or "defendant") alleging one count of race discrimination in violation of 42 U.S.C. § 1981 [D.E. 1]. On November 3, 2023, SECU answered the complaint [D.E. 8]. On November 30, 2023, SECU moved for judgment on the pleadings [D.E. 11] and filed a memorandum and exhibits in support [D.E. 12, 12-1 through 12-8]. On February 5, 2024, plaintiffs responded in opposition [D.E. 19] and filed two supporting exhibits [D.E. 19-1, 19-2]. On February 19, 2024, SECU replied [D.E. 20]. As explained below, the court grants SECU's motion for judgment on the pleadings and dismisses with prejudice plaintiffs' complaint.

I.

In 2021, plaintiffs filed an action in this district against SECU concerning the same allegations in this action. See Witherspoon v. State Employees' Credit Union, No. 5:21-CV-360 (E.D.N.C.). On August 29, 2022, Judge Flanagan dismissed that action without prejudice after SECU filed a motion for judgment on the pleadings. See Witherspoon, No. 5:21-CV-360, [D.E. 22] (E.D.N.C. Aug. 29, 2022). On August 29, 2023, plaintiffs filed this action "in an attempt to

enter the discovery phase and gather additional evidence of the allegation[s] contained in the complaint." [D.E. 19] 1.

Witherspoon and El-Amin are an African-American couple. See Compl. [D.E. 1] ¶¶ 1–2, 49. They live in Garner, North Carolina. See id. The allegations concern the events leading up to and following their wedding on September 9, 2017.

In 2016, plaintiffs booked a wedding venue in Atlantic Beach, North Carolina. See id. at ¶¶ 9–12. Between April and June 2016, plaintiffs paid a $2,000 deposit to the wedding venue. See id. at ¶ 14. Plaintiffs executed a contract with the wedding venue, and from January 2017 through August 2017, paid roughly $9,200 to the wedding venue. See id. at ¶¶ 14–17. On September 1, 2017, El-Amin mailed a check for $12,933.10 to the wedding venue. See id. at ¶ 20. El-Amin believed that amount represented the balance due to the wedding venue. See id.

As the September 9, 2017 wedding date approached, plaintiffs arrived in Atlantic Beach to finish preparations. See id. at ¶¶ 21–24. Unfortunately, Hurricane Irma arrived at about the same time. See id. Hurricane Irma caused numerous guests to cancel their plans to attend the wedding, and plaintiffs attempted to negotiate with the wedding venue to reduce services and costs for the event with a lower than anticipated guest count. See id. at ¶¶ 25–36.

On September 8, 2017, the wedding venue representative "suggested" that she had taken the $12,933.10 check from El-Amin to SECU to verify funds and an SECU employee said that "there were insufficient funds in the account." Id. at ¶ 37. Witherspoon told the wedding venue representative that "any check drawn on their SECU account would be paid and that if funds were insufficient, they would receive an alert." Id. at ¶ 38. Thereafter, the negotiations broke down. See id. at ¶¶ 39–45. On September 8, 2017, El-Amin emailed the wedding venue canceling the wedding at the venue. See id. at ¶ 46.

2

By September 8, 2017, plaintiffs allege that they had already paid approximately $11,200 to the wedding venue. See id. at ¶ 47. On September 9, 2017, plaintiffs married at a different venue. See id. at ¶ 49. On September 12, 2017, El-Amin stopped payment on the $12,933.10 check. See id. at ¶ 48. Plaintiffs did not seek a refund of the $2,000 deposit. See id. at ¶ 50.

On October 3, 2017, the Atlantic Beach Police Department ("ABPD") arrested Witherspoon at his home in Garner, North Carolina for "Felony Obtaining Property by False Pretense and Conspiracy to Obtain Property by False Pretense." Id. at ¶¶ 52, 62. The charges alleged that Witherspoon "knowingly, and with the intent to defraud, planned a wedding, and stating they would pay [the] balance for the services, but only paid $500 deposit, taking advantage of full benefits as if balance was paid in full." Id. at ¶ 54. ABPD charged El-Amin with the same two crimes and an additional charge of "Felony Worthless Check." Id. at ¶¶ 56, 62. Plaintiffs contend they never consumed any food or alcohol or used any services or property of the wedding venue. See id. at ¶ 57.

Plaintiffs allege that the court dismissed the first two charges against each plaintiff at the probable cause hearing. See id. at ¶¶ 70–72. On December 13, 2019, a special assistant district attorney dismissed the felony worthless check charge. See id. at ¶ 73.

Plaintiffs allege a race discrimination claim under 42 U.S.C. § 1981 against SECU and cite their account agreement with SECU and that SECU marked the $12,933.10 check as non-sufficient funds ("NSF"). See id. at ¶¶ 74–91. Plaintiffs allege that if SECU never marked the check as NSF, then ABPD would not have filed criminal charges against plaintiffs. See id. at ¶ 67. Plaintiffs allege that the NSF stamp on the check is dated September 7, 2017, but that SECU in fact stamped the check on September 8, 2017, after plaintiffs' discussions with the wedding venue broke down. See id. at ¶ 65.

3

The wedding venue never formally presented the check to SECU for payment and never deposited it. See id. at ¶ 66. Plaintiffs allege that whichever SECU employee stamped the check as NSF viewed plaintiffs' pictures when reviewing their accounts. See id. at ¶ 78. Plaintiffs allege that the unidentified SECU employee "would not have marked a check for white persons knowing the same to have never been presented for payment." Id. at ¶ 81. Plaintiffs contend that SECU discriminated against plaintiffs because of their race by stamping the check NSF "without any investigation or inquiry to Plaintiffs and by failing to exercise the reasonable and ordinary care with regard to Plaintiffs['] account." Id. at ¶ 82. Plaintiffs allege that SECU should never have marked the check NSF, and that if the SECU employee saw white individuals' pictures on the account, the SECU employee would not have marked the check NSF. See id. at ¶ 89.

Judge Flanagan dismissed plaintiffs' first complaint concerning these allegations because "[d]etails regarding defendant or its agents' knowledge of plaintiffs' race are conspicuously absent." Witherspoon, No. 5:21-CV-360, [D.E. 22] 6 (E.D.N.C. Aug. 29, 2022) (quotation omitted). Even assuming differential treatment, Judge Flanagan held that plaintiffs "have not alleged anything beyond mere conclusion and speculation they were treated differently because of their race." Id. (cleaned up). Thus, Judge Flanagan dismissed plaintiffs' section 1981 claim against SECU without prejudice. See id.

II.

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should be granted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other

4

grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002).

The same standard applies to a motion for judgment on the pleadings as to a motion to dismiss for failure to state a claim. See Burbach Broad. Co., 278 F.3d at 405–06. When a court evaluates a motion for judgment on the pleadings, it must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015); Burbach Broad. Co., 278 F.3d at 406. A court must determine whether a pleading is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–70 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense."

5

Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

In evaluating a motion for judgment on the pleadings, the court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c); Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider "matters of which a court may take judicial notice," such as public records. Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007). In addition, a court may consider documents attached to a motion for judgment on the pleadings so long as those documents are "integral to the complaint" and authentic. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). However, the "[d]efendant cannot rely on allegations of fact contained only in the [a]nswer, including affirmative defenses, which contradict the [c]omplaint because [p]laintiff was not required to reply to [d]efendant's [a]nswer, and all allegations in the [a]nswer are deemed denied." Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012) (cleaned up); see Fed. R. Civ. P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided.").

Section 1981 provides in relevant part, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 "protects all persons from racial discrimination in making and enforcing contracts." Woods v. City of Greensboro, 855 F.3d 639, 645 (4th Cir. 2017). "To succeed on a § 1981 claim, a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." Nadendla v. WakeMed, 24 F.4th 299, 305 (4th Cir. 2022) (explaining that

6

"a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements"). A plaintiff also must show that his race was the "but for" cause of the interference with a contractual interest. Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 340–41 (2020).

SECU argues that plaintiffs fail to plausibly allege a section 1981 claim. See [D.E. 12] 3. In support, SECU notes that plaintiffs fail to allege anything beyond conclusion and speculation that SECU "treated [plaintiffs] differently because of their race." Id. at 6; see Comcast Corp., 589 U.S. at 333; Lemon v. Myers Bigel, P.A., 985 F.3d 392, 394 (4th Cir. 2021). SECU also provides several valid, non-racial reasons for how SECU treated plaintiffs. See [D.E. 12] 6–10.

Plaintiffs respond that discovery concerning the specific sequence of events leading to SECU marking the check NSF may shed light on the unidentified SECU employee's reason for stamping NSF on the check. See [D.E. 19] 6. Plaintiffs also argue that evidence of an investigating police officer asking the SECU employee to mark the check NSF to support criminal charges would evince SECU's "implicit" racial bias. See id.

SECU replies that plaintiffs switched their argument from an "obligation . . . on the part of SECU to send" an alert to plaintiffs about insufficient funds to a theory that a "member of the Atlantic Beach Police Department instructed SECU to mark the check 'NSF' long after Plaintiffs issued a stop payment order on it." [D.E. 20] 1–2. SECU argues that this new theory of when and how SECU marked the check NSF negates any section 1981 claim because "[f]ollowing an order from a law enforcement officer in the midst of an investigation cannot be a valid legal basis for a discrimination claim." Id. at 4. Thus, SECU argues that plaintiffs "did not suffer a loss of a legally protected right" and "race had nothing to do with SECU following the instructions of law enforcement." Id. at 6.

7

Plaintiffs advance two speculative theories of race discrimination. First, plaintiffs allege that on September 8, 2017, an unidentified SECU employee marked their check as NSF, allegedly after seeing plaintiffs' pictures in their SECU account profiles and deciding to discriminate against them because of their race. See Compl. ¶¶ 65, 78. This allegation relies on nothing more than speculation to claim that SECU treated plaintiffs differently because of their race, and the claim fails. See, e.g., Iqbal, 556 U.S. at 679.

Second, in their response to SECU's motion for judgment on the pleadings, plaintiffs cite deposition testimony from their lawsuit against the wedding venue to argue that SECU marked the check NSF on September 21, 2017, at the instruction of Officer Harvey of the ABPD as part of his investigation. See [D.E. 19] 2. Plaintiffs, however, cannot use their response to SECU's motion for judgment on the pleadings to amend their complaint. See, e.g., U.S. ex rel. Carter v. Halliburton Co., 866 F.3d 199, 210 n.6 (4th Cir. 2017); Murray Energy Corp. v. Adm'r of Envt'l Prot. Agency, 861 F.3d 529, 537 n.5 (4th Cir. 2017); vonRosenberg v. Lawrence, 849 F.3d 163, 167 n.1 (4th Cir. 2017); S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013); see also Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009); Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009); Donald v. Novant Health, Inc., ___ F. Supp. 3d ___, 2023 WL 5672832, at *5 (E.D.N.C. Sept. 1, 2023); Shinaberry v. Town of Murfreesboro, No. 2:17-CV-7, 2019 WL 5446712, at *5 n.4 (E.D.N.C. Oct. 23, 2019) (unpublished); Optima Tobacco Corp. v. U.S. Flue-Cured Tobacco Growers, Inc., No. 5:16-CV-889, 2019 WL 4858848, at *8 (E.D.N.C. Sept. 30, 2019) (unpublished); United States ex rel. Graybar Elec. Co., Inc. v. TEAM Constr., LLC, 275 F. Supp. 3d 737, 748 n.3 (E.D.N.C. 2017). Thus, the argument fails.

8

Alternatively, and in any event, even if plaintiffs included in their complaint an allegation that "racial animus" caused the SECU employee to mark the check NSF when directed to do so by Officer Harvey, that claim is pure speculation. See, e.g., Iqbal, 556 U.S. at 679. Accordingly, plaintiffs' section 1981 claim fails.

Alternatively, plaintiffs fail to plausibly allege an underlying contractual interference. As noted, plaintiffs' complaint alleges that SECU marked the check NSF on September 8, 2017, but dated it September 7, 2017. See Compl. ¶¶ 64–65. Plaintiffs now claim that SECU marked the check NSF on September 21, 2017, at the direction of Officer Harvey. See [D.E. 19] 2. Even accepting as true the new allegation about September 21, 2017, SECU did not deprive plaintiffs of any contractually obligated alert before marking the check NSF on September 21, 2017, because, according to plaintiffs, the check was never presented to SECU for payment. See Compl. ¶ 83; Witherspoon, No. 5:21-CV-360, [D.E. 22] 7–8 (E.D.N.C. Aug. 29, 2022). Furthermore, SECU did not interfere with any contractual obligation to provide an alert when it allegedly marked the check NSF on September 21, 2017, at Officer Harvey's direction. Notably, the agreement between SECU and plaintiffs contained a clause acknowledging that SECU "may comply with any legal process [SECU] believe[s] to be valid," and SECU was "under no obligation to object to or otherwise contest on [plaintiffs'] behalf any legal process brought against [plaintiffs'] account." See [D.E. 12-6] 25.[1] Moreover, plaintiffs' argument in opposition only cites the portion of the agreement that discusses the procedure SECU follows before assessing NSF fees. See [D.E. 19]

---

[1] Plaintiffs failed to attach a copy of the agreement to their complaint but did refer to the agreement in the complaint. See Compl. ¶ 75. Defendants attached a copy of the agreement to their memorandum in support and plaintiffs cited that exhibit as evidence of the agreement. See [D.E. 12-6]; [D.E. 19] 5. Accordingly, the court considers the exhibit. See Philips, 572 F.3d at 180.

9

5. Plaintiffs fail to plausibly allege that SECU interfered with a contractual right of plaintiffs when following an officer's instructions to mark a check NSF.

SECU asks the court to dismiss plaintiffs' complaint with prejudice. See [D.E. 11] 1. The decision whether to dismiss a claim with or without prejudice "is within the district court's discretion." Carter v. Norfolk Cmty. Hosp. Ass'n, Inc., 761 F.2d 970, 974 (4th Cir. 1985); see In re PEC Sols., Inc. Sec. Litig., 418 F.3d 379, 391 (4th Cir. 2005). "[D]ismissal with prejudice is proper if there is no set of facts the plaintiff[s] could present to support [their] claim." Weigel v. Maryland, 950 F. Supp. 2d 811, 826 (D. Md. 2013); see Cozzarelli v. Inspire Pharms., Inc., 549 F.3d 618, 630 (4th Cir. 2008). The court has reviewed the pleadings and the record and concludes that any further amendment would be futile. Accordingly, the court dismisses with prejudice plaintiffs' complaint.

III.

In sum, the court GRANTS defendant's motion for judgment on the pleadings [D.E. 11] and DISMISSES WITH PREJUDICE plaintiffs' complaint. The clerk shall close the case.

SO ORDERED. This 13 day of May, 2024.

								JAMES C. DEVER III
								United States District Judge